M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**ARNOLD LAW FIRM**
6200 Canoga Avenue, Suite 375
Woodland Hills, CA 91367
Tel: (747) 777-7748
Fax: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

Melissa R. Emert (*pro hac vice forthcoming*)
Gary S. Graifman (*pro hac vice forthcoming*)
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Tel: (201) 391-7000
Fax: (201) 307-1086
memert@kgglaw.com;
ggraifman@kgglaw.com

Lynda Grant (*pro hac vice forthcoming*)
**THEGRANTLAWFIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (212) 292-4441
Fax: (212) 292-4442
lgrant@grantfirm.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CEREBRAL INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Jane Doe ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations upon information and belief, except as to her own actions, based upon the investigation of counsel and facts that are a matter of public records.

## SUBJECT MATTER JURISDICTION

1.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(d) because this is a class action in which the amount in controversy exceeds $5,000,000, and there are more than 100 members of the proposed class ("Class") and at least one member of the class is a citizen of a state different from the Defendant.

## NATURE OF CASE

2.    This class action asserts claims against  Defendant Cerebral, Inc.'s ("Cerebral" or "Defendant") for its unlawful transmission and disclosure of Plaintiff's and Class Members' confidential personally identifiable information ("PII") and protected health information ("PHI") (collectively referred to as "Private Information") to Meta Platforms, Inc. d/b/a Meta ("Facebook") and/or Google LLC d/b/a Google ("Google") via a tracking pixel (the "Tracking Technology" or "Tracking Technologies") without prior consent, and in violation of its common law, state and statutory duties, among other things.

///

3.      Cerebral provides healthcare services via its website and mobile application.   The only means for customers seeking mental health assistance, therapy and medication through Cerebral, is to provide Cerebral with their Private Information, including the completion of a mental health assessment, in which they provide Cerebral with their most confidential mental health and addiction problems and history.

4.      Despite the confidentiality of this information, in an email disseminated by Cerebral on about March 6, 2023 (the "Notice Email") to Plaintiff and Class Members, Cerebral disclosed for the first time that through the use of Tracking Technologies including Pixels ("Pixels"), it has been transmitting and disclosing the Private Information of Plaintiff and its other patients to unauthorized third parties, such as Google and Facebook, since its inception in 2019.

5.      According to the Notice Email received by Plaintiff on about March 6, 2023, through tracking technologies ("Tracking Technologies") on portions of its website and mobile applications and with certain subcontractors and other service providers ("Subcontractors"), Cerebral shared Plaintiff's and the Class's PHI and PII with unauthorized third parties, such as Google and Facebook, likely in order to monetize this information by providing them with Private Information sufficient to enable them to direct advertising and other information to Plaintiff and Class Members.

6.     According to the Notice Email, although Cerebral has been transmitting this Private Information since 2019, it only recently determined to inform Plaintiff and Class Members in the purported interest of "transparency" that it was in fact providing their Private Information to third parties, such as Google and Facebook.

7.     The private information shared or disclosed includes certain personal or protected health information of current and former patients, or those who merely filled out the mental health survey or assessment but never actively engaged with the app or received mental health advice or therapy. This Private Information includes, but is not limited to names, phone numbers, email addresses, dates of birth, IP address, Cerebral client ID numbers, insurance co-pay amounts, subscription type, booking information, treatment information and other clinical information, health insurance and pharmacy benefit (plan name and group member numbers), insurance co-payments and other demographic information.

8.     By allowing such Tracking Technology on its website, Cerebral effectively unlawfully intercepted and transmitted Plaintiff's and Class Members' Private Information and did so even after it was investigated by a committee of Senators.

9.     In fact, earlier this year, a Senate committee questioned Cerebral on its poor practices regarding its patients' Private Information, as part of an investigation

into the use of tracking by telehealth start-ups through which they provided private healthcare information of users of the platform to social media platforms for advertising purposes.[1] According to a letter that the Senate committee sent to Cerebral's CEO, "On November 30th, 2022, a spokesperson for your company wrote in an email, 'We are removing any personally identifiable information, including name, date of birth, and zip code from being collected by the Meta Pixel.' As of December 7, 2022, your site was still collecting personally identifiable information."[2]

10.    Undoubtedly induced by the Senate investigation, in the Notice Email, Cerebral revealed that earlier this year, it had engaged in a review of its data sharing practices and on January 3, 2023, determined that it had disclosed PHI to Subcontractors and others "without having obtained HIPAA-required assurances."

11.    In allowing such Tracking Technologies, and transmitting Plaintiff's and Class Members' Private Information, that they were required to provide in order

_____

[1] https://www.commerce.senate.gov/2023/2/cantwell-klobuchar-collins-lummis-call-on-telehealth-companies-to-protect-patients-sensitive-health-data

[2] https://www.klobuchar.senate.gov/public/_cache/files/2/e/2e36adce-7c6a-491f-87e6-a42262e16b65/CF3D6D0CF2D853FD17E1916DA2D95551.health-data-privacy-letter-to-cerebral.pdf; https://healthitsecurity.com/news/cerebral-notifies-3.1m-users-of-healthcare-data-breach-stemming-from-pixel-use

to use the Cerebral mobile app or the website, Cerebral disregarded the rights of Plaintiff and Class Members (defined below) intentionally, willfully, recklessly, or negligently, and failed to tell users that any Private Information that it was providing to Cerebral would be transmitted to other platforms that could then use this confidential and sensitive information for advertising purposes.

12.    The Private Information that Defendant discloses through the Tracking Technology or Pixel is valuable to internet marketing companies like Facebook, Google, TikTok and others, as they receive, view, analyze and aggregate information to build consumer profiles to assist advertisers in targeting desired demographics.

13.    Defendant breached its obligations in one or more of the following ways: (1) failing to adequately review its marketing programs and web based technology to ensure its website was safe and secure; (2) failing to remove or disengage technology that is known and designed to share web-user's information; (3) failing to obtain consent form Plaintiff and Class Members before disclosing their Private Information to Facebook, Google, or others; (4) failing to take steps to block the transmission of Plaintiff's and Class Members' Private Information through Tracking Technology or Pixels; and (5) otherwise failing to design and monitor its website to maintain the confidentiality and integrity of the Private Information entrusted to it.

14.     Accordingly, the purpose of this class action is to protect Plaintiff's and Class Member's right to protect their Private Information, to choose who receives it, and how it is used, and to seek remedies for the harm cause by Defendant's intentional, reckless or negligent disclosures, including the invasion of their privacy, the loss of control over their Private Information, statutory damages, the diminution of the value of their Private Information, and the continued and ongoing risk of exposure and use of their Private Information.

15.     Accordingly, Plaintiff brings this action against Cerebral seeking redress for its unlawful conduct and asserting claims for: (i) negligence and negligence per se; (ii) breach of fiduciary duty; (iii) California Unfair Competition Law,  (iv) California Invasion of Privacy Act; and (v) Confidentiality of Medical Information Act. Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, as well as long-term and adequate credit monitoring services funded by Defendant, and declaratory relief.  Plaintiff further seeks to stop Cerebral from using Tracking Technologies and providing their Private Information to third parties.

## **PARTIES**

16.     Plaintiff, Jane Doe, is an individual who is a resident in Virginia, and was a patient who used the Cerebral app.

17. In order to receive treatment, Jane Doe created an account twice with Cerebral on its mobile app, during which she provided Cerebral with her personal and private healthcare information including information about her mental health, and prior treatment. She filled out the mental health assessment on or about November 4, 2020, and again on January 26, 2023, such that Cerebral has her Private Information. She further scheduled several appointments with various Cerebral clinicians.

18. During that time, Plaintiff reasonably believed that her Private Information was secure and that she was only transmitting her Private Information to Cerebral for purposes of receiving mental health treatment, and that such information would not be transmitted to any unauthorized third parties.

19. Had Plaintiff known the truth, she would not have provided Cerebral with her Private Information.

20. On March 7, 2023, Plaintiff received the Notice Email indicating that her confidential and private healthcare information may have been shared by Cerebral with unauthorized third parties. This was done without the Plaintiff's knowledge and consent.

21. Defendant Cerebral is a corporation organized by Delaware law and maintains a principal place of business at 340 South Lemon Avenue, Suite 9892, Walnut, California 91789.

## JURISDICTION AND VENUE

22.    The Court has general personal jurisdiction over Cerebral as it does business in this State, and operates, conducts, engages in and carries out a business venture in this State.  It is registered with the Secretary of State as a for profit corporation and maintains its headquarters in California. The tortious acts complained of herein were also committed in California.  It also has specific jurisdiction over Cerebral as many of the tortious acts that it committed occurred in the State of California.

23.    Venue is proper in this District pursuant to 28 U.S.C. §1391 because it is the district with which Cerebral resides and where the events and omissions giving rise to the causes of action asserted herein arose.

## BACKGROUND OF ACTION

24.    Cerebral is a startup telehealth company headquartered in California, which has been providing mental health services virtually throughout the U.S. since 2019.[3] It claims to provide affordable mental health care with the highest quality of care by following a clinical code of ethics. One code which includes using "the latest information security technology to protect your data, which is not shared without your consent, and will only be used internally to improve clinical care."[4]

---

[3] https://cerebral.com/about-cerebral (last accessed Mar. 13, 2023).

[4] *Id.*

25.     Cerebral "offers long-term online care and medication management for a wide range of mental health conditions."[5]

26.     In the ordinary course of receiving medical care services from Cerebral, each patient and employee must provide (and Plaintiff did provide) Cerebral with sensitive, personal, and private information, such as their:

- Name, address, phone number, and email address;

- Date of birth;

- Social Security number;

- Marital status;

- Employer with contact information;

- Primary and secondary insurance policy holders' name, address, date of birth, and Social Security number;

- Demographic information;

- Driver license or state or federal identification;

- Information relating to the individual's medical and medical history;

- Insurance information and coverage; and

- Banking and/or credit card information.

_____

[5]  *See*  https://cerebral.com/faqs#General_questions-How_does_Cerebral_work_ (last visited Mar. 13, 2023).

27.     Even those who are not eventually treated through Cerebral are caused to provide Private Information through a questionnaire or self-assessment through which Cerebral asks for personal mental health information.

28.     Cerebral collects and stores medical records and other protected health information for its patients, including records of treatments and diagnoses.

29.     In doing so, Cerebral has statutory, regulatory, contractual, fiduciary and common law duties to safeguard Private Information from disclosure and ensure that it remains private and confidential.

30.     Cerebral is required to protect such Private Information by the Health Insurance Portability and Accountability Act ("HIPAA Privacy Policy") .

31.     Cerebral agreed to and undertook legal duties to maintain the protected health and personal information entrusted to it by Plaintiff and Class Members safely, confidentially, and in compliance with all applicable laws, including the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, and the Health Insurance Portability and Accountability Act ("HIPAA").

32.     Further, the Cerebral app specifically and misleading states that "[w]e never sell your information or spam you."

33.     Yet, Cerebral failed to adhere to its duties to properly secure the Private Information of Plaintiff and Class, or its  own promises of patient rights.

## CEREBRAL'S USE OF PIXELS AND TRACKING TECHNOLOGIES

34.    Cerebral claims to be "a mental health telemedicine company that is democratizing access to high quality mental health care for all." Cerebral also offers services for those with alcohol dependence and has monthly subscriptions for medication and therapy for mental health conditions, including ADHD, anxiety, and depression. It is reported that Cerebral has served over 200,000 patients nationwide over the last several years. During and since COVID, the number of patients seeking healthcare via Cerebral skyrocketed.

35.    Cerebral encourages patients to use its website to research their medical symptoms and health issues, identify doctors who can treat their specific conditions, order, and take other actions related to their personal health care. When doing this, patients convey highly private information, including private medical information, through Cerebral's website.

36.    The new patient would have to disclose a plethora of sensitive and confidential information, including the patient's name, address, date of birth, Social Security number, prior medical history, medications and current symptoms. By inputting this information, patients trusted Cerebral to keep this sensitive and confidential information safe from disclosure to third parties.

37.    Cerebral affirmatively included the Meta Pixel and other online trackers on its website, which was done without disclosing this fact to patients and other users of the website.

38.    When a user enters health information through Cerebral's website and patient portals that incorporate Meta Pixel and other online trackers, this information— including, in some instances, specifically what the user is seeking treatment for—is sent to Meta via Meta Pixel and other companies through their online trackers. Particularly in the case of Cerebral, whose function is to work with patients with particular issues such as ADHD, anxiety and depression, companies can obtain a treasure trove of personal medical information about the user simply by those users accessing this site.

39.    Third party websites that incorporate Meta Pixel and other online trackers such as those operated by Cerebral, benefit from the ability to analyze a user's experience and activity on its website to assess the website's functionality and improve traffic. The website also gains information about its customers through the Meta Pixel and other online trackers that can target them with advertisements and measure the results of advertisement efforts. Cerebral transmitted to third parties such as Meta portions of patients' private communications through pieces of tracking code it embedded in its website, solely to share such information with marketing entities.

40.    When Meta Pixel and other online trackers are incorporated by companies such as Cerebral, unbeknownst to users and without their consent, unauthorized third parties gain the ability to surreptitiously gather user interaction with the website ranging from what a user clicks on to the personal information entered on a website and later sends users unsolicited advertisements based on that tracking information. This data, which can include health conditions, diagnoses, procedures, treatment status, the treating physician, medications, and other private personal information and healthcare information, is viewed, obtained, and used by companies such as Facebook in connection with targeted advertising, either aimed at the Cerebral users themselves or other individuals on social media sites like Facebook, Instagram, TikTok that fit a profile that is continuously being updated by additional personal health information provided by Cerebral through its hidden online trackers.

41.    Plaintiff and Class Members had their private healthcare information, including sensitive medical information, harvested through Cerebral's website using the Meta Pixel tool and other online trackers without their consent when they entered information on the patient portal for the Cerebral website, and continued to have their privacy violated when their private medical information was used for profit to send them targeted advertising related to medical conditions for which they were trying to obtain treatment through Cerebral's website.

42.    Because of this illegal information gathering, Plaintiff believes Cerebral shared personal health information about them with third parties without their consent, unknowingly providing other third parties with access to this sensitive personal information.

43.    Cerebral knows that the private healthcare and personal information collected through the Meta Pixel and other online trackers includes highly sensitive medical information but, in either conscious, reckless or negligent disregard for patient privacy, continued to collect, use, and profit from this information, and by embedding Meta Pixel and other online trackers they were sharing and permitting companies like Meta to collect and use Plaintiff's and the Class Members' User Data, including sensitive medical information.

44.    Plaintiff received the Notice Email through email on about March 6, 2023. The Notice Email notified Plaintiff of Cerebral's use of Tracking Technologies, and states that on January 3, 2023, after an internal review by Cerebral, Cerebral determined that it had disclosed protected health information to "certain Third-Party Platforms and some Subcontractors" without notifying Plaintiff and other Class members of this disclosure or obtaining their consent. The Notice Email states that the extent of the protected health information unlawfully disclosed depends upon whether the person simply created a Cerebral account, completed any

part of Cerebral's online mental health self-assessment and/or purchased a subscription plan from Cerebral, specifically:

a.   If you created a Cerebral account, the information disclosed may have included your name, phone number, email address, date of birth, IP address, Cerebral client ID number and other demographic or information;

b.   If, in addition to creating a Cerebral account, you also completed any part of Cerebral's online mental health self-assessment, the information disclosed may also have included your selected service, assessment responses, and certain associated health information;

c.   In addition to creating a Cerebral account and completing Cerebral's online mental health self-assessment, if one also purchased a subscription plan from Cerebral, the information disclosed may have included subscription plan type, appointment dates and other booking information, treatment and other clinical information, health insurance/pharmacy benefit information (for example, health plan name, group/member numbers, and insurance co-pay amounts).

45.   The Notice Email states that "[u]pon learning of this issue, Cerebral promptly disabled, reconfigured and/or removed the Tracking Technologies on Cerebral's Platforms to prevent any such disclosures in the future and discontinued

or disabled data sharing with any Subcontractors not able to meet all HIPAA requirements."

46.    Cerebral's actions constitute an extreme invasion of Plaintiff and Class Members' right to privacy and violate various federal and state statutes and common law doctrines, including the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, *et seq.* and the privacy rights protected by California's Constitution and common law; violation of California's Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.*; violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*; breach of fiduciary duty, and other tortious acts as described herein.

## CEREBRAL IS UNDER SENATE INVESTIGATION

47.    Cerebral has been under investigation by a Senate committee investigating a number of prominent telehealth startups for failing to protect sensitive health information based upon an investigation by STAT and The Markup. Those investigations found that Cerebral, along with a number of other healthcare startups, shared private and personal patient data with Facebook, Google and other major advertising platforms.[6]

---

[6] https://www.statnews.com/2023/02/07/telehealth-privacy-cerebral-workit-monument-data-congress/?mkt_tok=ODUwLVRBQS01MTEAAAGJyxn3NcqaGy0t1YQav122e2

48.    On about February 7, 2023, U.S. Senators Amy Klobuchar, Susan Collins, Maria Cantwell, and Cynthia Lummis called on three telehealth companies, including Cerebral, to protect their patients' sensitive health data.[7]  This Senate investigation was induced by reports that these telehealth companies, including Cerebral, were tracking and sharing their customer's personally identifiable healthcare information with social media platforms for advertising purposes, despite their promises and representations that this user data, including data about mental health and addiction treatment, would remain confidential.

49.    In a letter to David Mou, Cerebral's chief executive officer, the Senators stated that "[w]e write to express our concern regarding reports that Cerebral is tracking and sharing sensitive and personally-identifiable health data with third-party social media and on-line search platforms such as Google and Facebook that monetize this data to target advertisements."

50.    The Senators' letter further states that "[r]ecent reports highlight how Cerebral shares users' contact information and health care data that should be

_____

Z81S9Unyj1rPvoFsWnfXsQnvsJ5nn3_kz6VfWIiN01lx9LxQOmRJjYBOXbXmO YWZqmS51vQkZ2VeUb0rr4cdrl

[7] https://www.klobuchar.senate.gov/public/index.cfm/news-releases?ID=8195414A-D35F-4390-9C33-56AAC26D4956

confidential, including answers to personal medical questionnaires as well as information about medical products they purchase on your website. Although your website claims that information entered on these intake forms is confidential and secure, this information is reportedly sent to advertising platforms, along with the information needed to identify users. This data is extremely personal, and it can be used to target advertisements for services that may be unnecessary or potentially harmful physically, psychologically, or emotionally."

51.    The letter then proceeds to require Cerebral to supply certain information to the Senators, including the complete list of questions asked of users, and the third-party platforms to which this information has been sent in the past three years.

52.    The letter further questioned Cerebral's November 30, 2022 statement that "[w]e are removing any personally identifiable information, including name, date of birth, and zip code from being collected by the Meta Pixel", when, as of December 7, 2022, the site was still collecting personally identifiable information.

53.    It was in light of this Senate investigation, that Cerebral finally disclosed to its users in March 2023, that in fact, it was using Tracking Technology, and that it had shared personally identifiable information and healthcare information with unauthorized third parties including certain platforms and Subcontractors,

effectively admitting that it has defrauded users and that it violates privacy laws, HIPAA and other relevant laws.

///

54.    This is not the first allegation of privacy related issues made against Cerebral. In a lawsuit filed in California state court in April 2022, a former Cerebral employee alleged he was fired in retaliation for objecting to the Company's plans to "egregiously put profits and growth before patient safety" after he raised several concerns to Cerebral leadership during his time at the Company. The Complaint also alleges that Cerebral does not adhere to regulations with respect to the privacy and security of patient data, and specifically that "employees and former employees could gain unauthorized access to confidential patient medical information," potentially compromising tens of thousands of patient records. And back on August 19, 2022, a related medical provider group, Cerebral Medical Group, P.A., notified the U.S. Department of Health and Human Services about a security breach incident involving over 6,100 patients stemming from an unauthorized access and disclosure of certain types of patient information.

55.    The federal government recently issued a warning to companies such as Cerebral that tracking code like Meta Pixel and other third-party trackers may violate federal privacy laws when installed on healthcare websites. The statement, titled *Use of Online Tracking Technologies By HIPAA Covered Entities And*

*Business Associates* (the "Bulletin"), was recently issued by the Department of Health and Human Services' Office for Civil Rights ("OCR"). While healthcare organizations regulated under HIPAA may use third-party tracking tools in a limited way, such as to analyze data key to its operations, they may not use these tools to expose patients' protected health information to third party marketers. The Bulletin explains:

> Regulated entities [those to which HIPAA applies] are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA compliant authorizations, would constitute impermissible disclosures.

56.    Plaintiff and Class Members had no knowledge that Cerebral was collecting and transmitting their private healthcare and personal information to unauthorized third parties, nor did they consent to this transmission.

57.    There was no indication on the Cerebral website or app that the information was being transmitted to third parties for marketing purposes and in fact, said the opposite: that is, that Cerebral was expressly prohibited from using protected information for marketing purposes.

58.     Rather, it indicated that disclosure of protected healthcare information would only be made in accordance with the law, for public health activities, for health care oversight, and pursuant to certain FDA requirements, among other things.

59.     The website and app further stated that Cerebral would notify users of any breach of the website within 60 days from breach discovery.

**PLAINTIFF AND CLASS MEMBERS HAVE A REASONABLE EXPECTATION OF PRIVACY**

60.     Plaintiff and Class Members have a reasonable expectation of privacy in their PII and PHI, including personal information and sensitive medical information. Cerebral surreptitiously collected, used, and disclosed Plaintiff's and Class Members' PII and PHI, including, highly sensitive medical information, through the Meta Pixel and other online trackers in violation of Plaintiff's and Class Members' reasonable expectations of privacy.

61.     Advertisers view private health information as having a particularly high value.

62.     Cerebral is required by the CMIA and other California laws identified, and various other laws and regulations to protect Plaintiff's and Class Members' Private Information and to handle notification of any breach in accordance with applicable breach notification statutes. These duties are established in many California statutes, including Cal. Civ. Code §§ 56.10(a), 56.101, 1798.21, 1798.29,

Cal. Bus. and Prof. Code §§ 17200 et seq., Cal. Bus. and Prof. Code §§ 22575-2257, Cal. Penal Code § 630-632 et seq., and Article I, § 1 of the California Constitution. Failing to do so results in acts of negligence *per se* by Cerebral.

63.    In addition, Cerebral is an entity covered by HIPAA and various contracts require that it comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C, which establish national security standards and duties for Cerebral's protection of Private Information maintained by it in electronic form. HIPAA limits the permissible uses of health information and prohibits the disclosure of this information without explicit authorization. See 45 C.F.R. § 164.502. HIPAA also requires that covered entities implement safeguards to protect this information. *See* 45 C.F.R. § 164.530(c)(1).

64.    HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

65.    "Electronic protected health information" is defined as "individually identifiable health information ... that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

66.    HIPAA's Security Rule requires Cerebral to: (a) ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits; (b) protect against any reasonably expected threats or hazards to the security or integrity of such information; (c) protect against any reasonably expected uses or disclosures of such information that are not permitted; and (d) ensure compliance by their workforce.

67.    HIPAA also requires Cerebral to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(c), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

68.    "Electronic protected health information" is defined as "individually identifiable health information ... that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

69.    HIPAA's Security Rule requires Defendant to: (a) ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or

transmits; (b) protect against any reasonably expected threats or hazards to the security or integrity of such information; (c) protect against any reasonably expected uses or disclosures of such information that are not permitted; and (d) ensure compliance by their workforce.

70.     HIPAA also requires Cerebral to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(c), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

71.     Cerebral failed to comply with safeguards mandated by HIPAA regulations, including, but not limited to:

a. Failed to ensure the confidentiality and integrity of electronic PHI that Defendant created, received, maintained, and transmitted, in violation of 45 C.F.R. section 164.306(a)(1);

b. Failed to put technical policies and procedures into practice for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. section 164.312(a)(1);

c.  Failed to put policies and procedures into practice to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. section 164.308(a)(1);

d.  Failed to identify and respond to suspected or known security incidents and mitigate harmful effects of security incidents known to the covered entity, in violation of 45 C.F.R. section 164.308(a)(6)(ii);

e.  Failed to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 C.F.R. section 164.306(a)(2);

f.  Failed to protect against any reasonably anticipated uses or disclosures of electronic PHI not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. section 164.306(a)(3);

g.  Impermissibly and improperly used and disclosed PHI that is and remains accessible to unauthorized persons, in violation of 45 C.F.R. section 164.502, *et seq*.;

h.  Failed to effectively train all members of its workforce (including independent contractors) on the policies and procedures for PHI as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PHI beyond simply using

training software to test staff by imitating phishing emails, in violation

of 45 C.F.R. sections 164.530(b) and 164.308(a)(5); and

i. Failed to design, implement, and enforce policies and procedures

establishing physical and administrative safeguards to reasonably

safeguard PHI in compliance with violation of 45 C.F.R. section

164.530(c).

72.     Cerebral also violated the duties applicable to it under the Federal

Trade Commission Act, 15 U.S.C. § 45 et seq. ("FTC Act"), by engaging in "unfair

or deceptive acts or practices in or affecting commerce." The FTC has concluded

that a company's failure to maintain reasonable data security for consumers'

sensitive personal information is an "unfair practice" in violation of the FTC Act.

73.     As established by these laws, Cerebral owed a duty to Plaintiff and

Class Members to exercise reasonable care in obtaining, retaining, securing,

safeguarding, deleting, and protecting the Private Information in its possession from

being misused by unauthorized persons such as Meta and other unauthorized third

parties.

74.     By taking affirmative acts inconsistent with these obligations, Cerebral

disclosed and permitted the disclosure of Private Information to unauthorized third

parties, including Meta and other unauthorized third parties.   Through such actions

or inactions, Cerebral failed to preserve the confidentiality of Private Information it was duty-bound to protect.

75.    As a direct and proximate result of Cerebral's actions, inactions, omissions, breaches of duties and want of ordinary care that directly and proximately caused or resulted in this unauthorized disclosure, Plaintiff and Class Members have suffered and will continue to suffer damages and other injury and harm in the form of, inter alia, (a) invasion of privacy, (b) breach of the confidentiality of their Private Information, (c) deprivation of the value of their Private Information, for which there is a well-established national and international market, as well as statutory damages to which they are entitled even without proof of access or actual damages; and (d) increased risk of future harm.

## PLAINTIFF'S AND THE CLASS' PRIVATE MEDICAL INFORMATION IS VALUABLE

76.    Plaintiff's and the Class' private medical information has value, and can be worth up to $1,000 per person or more, depending upon its completeness. It clearly has value to the third parties with whom Cerebral shared the information who monetized that information by using it to directly advertising to Plaintiff and other Class Members and may have resold that information.

## CLASS ACTION ALLEGATIONS

77.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(1), (b)(2) and/or (b)(3) individually and on behalf of the following Class:

All natural persons in the United States whose PII or PHI was collected through third-party tracking technology from any Cerebral website or application since January 1, 2019.

78.    Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) Cerebral, Cerebral's subsidiaries, affiliates, parents, successors, predecessors, officers, directors, agents, Subcontractor and any entity in which the Cerebral or its parent has a controlling interest and its current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendant's counsel.

79.    The exact number of members of the Class is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of over 3.1 million individuals, and the members can be identified through Cerebral's records.

80.    The Class' claims present common questions of law and fact, and those questions predominate over questions that may affect individual Class members.

81.    Common questions for the Class include, but are not limited to:

•    Whether Cerebral implemented and maintained reasonable security practices and procedures appropriate to protect Plaintiff's and Class Members' Private Information from unauthorized access or disclosure.

• Whether Cerebral and its employees, agents, officers, or directors negligently, intentionally or recklessly unlawfully disclosed or permitted the unauthorized disclosure of Plaintiff's and Class Members' Private Information to unauthorized persons.

• Whether Cerebral failed to protect and preserve the integrity of the Private Information found on Cerebral's electronic systems.

• Whether Cerebral has adequately addressed and fixed the websites and mobile applications that enabled the collection and disclosure of their Private Information.

• Whether Cerebral engaged in "unfair" business practices by failing to safeguard the Private Information of Plaintiff and the Class, and whether Cerebral's violations of the state and federal laws cited are "unlawful" business practices in violation of California Business and Professions Code § 17200, *et seq*.

• Whether Cerebral violated the California Medical Information Act, the California Invasion of Privacy Act, and the other laws cited.

• Whether Plaintiff and the Class are entitled to damages, equitable and injunctive relief to redress the imminent and

ongoing harm faced because of this unauthorized disclosure and Cerebral's failure to provide full and adequate notice of it, and the scope of such relief.

82.    Plaintiff's claims are typical of the claims of the other members of the Class. The claims of Plaintiff and the members of the Class arise from the same conduct by Cerebral and are based on the same legal theories.

83.    Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiff retained counsel competent and experienced in complex litigation and class actions, including litigation to remedy privacy violations. Plaintiff has no interest materially antagonistic to the interests of the Class, and Cerebral has no defenses unique to any Plaintiff. Plaintiff and counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor their counsel have any interest materially adverse to the interests of the other members of the Class.

84.    This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable.

85.    Pursuant to Rule 23(b)(3), in consideration of (a) the Class Members' interests in individually controlling the prosecution or defense of separate actions

(which in light of the statutory damages may not be significant); (b) the extent and nature of any litigation concerning the controversy already begun by or against Class Members (of which Plaintiff is not aware of any such litigation); (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum (here, where Defendant's headquarters are based); and (d) the likely difficulties in managing a class action (which considering the common issues involved should not be significant), this proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

86.    As Cerebral has contact information for Plaintiff and Class Members and recently sent an electronic notice to them as set forth above, notice of the pendency of this action can be accomplished via electronic mail to all members of the proposed Class.

87.    Plaintiff reserves the right to revise the class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

///

///

## **CALIFORNIA LAW APPLIES TO THE WHOLE CLASS**

88.    California substantive laws apply to every member of the Class. California's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend. § 1, and the Full Faith and Credit Clause, Art. IV. § 1 of the U.S. Constitution. California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and Class Members, thereby creating state interests to ensure that the choice of California state law is not arbitrary or unfair.

89.    Cerebral's principal place of business is located in this District and it conducts substantial business in California, such that California has an interest in regulating Cerebral's conduct under its laws. Cerebral's decision to reside in California and avail itself of California's laws renders the application of California law to the claims herein constitutionally permissible. The conduct at issue also originated in and emanated from California as that is where the decisions to include the Meta Pixel and other third-party trackers were made and likely effectuated, and where the illegal data transfers took place. Cerebral communicated with Meta and other unauthorized third parties while this PII and PHI was in transit or was being sent from or received within California through servers maintained by either Defendant or third parties in this State.

///

90.     Applying California law to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of the Plaintiff and the proposed Class, many Class Members reside in this State, and California has a greater interest in applying its laws here than any other interested state.

### COUNT I
### VIOLATION OF THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT (CAL. CIV. CODE § 56 *et seq*.)

91.     Plaintiff incorporates the foregoing allegations by reference as if fully set forth herein to the extent relevant to this Cause of Action and the relief available thereunder.

92.     Cerebral is a "health care service plan", "provider of health care" and/or a "recipient" of Private Information as defined by Cal. Civ. Code § 56.05(d) and (m), § 56.06(a), (b) & (d) and/or Section 56.13 and therefore subject to the requirements of the CMIA.

93.     California Civil Code § 56.06(d) specifically provides that (d) "[a]ny business that offers a mental health digital service to a consumer for the purpose of allowing the individual to manage the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual, shall be deemed to be a provider of health care subject to the requirements of this part."

///

94.    Cerebral must not disclose or permit the disclosure of Private Information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining authorization, subject to certain exceptions found in Cal. Civ. Code §§ 56.10(b) & (c) that do not apply here. Cal. Civ. Code § 56.10(a). By its affirmative acts and inactions set forth above, Cerebral disclosed or permitted the disclosure of Private Information to unauthorized third parties, in violation of this Section.

95.    Cerebral is required under the CMIA to ensure that it maintains, preserves, and stores Private Information in a manner that preserves the confidentiality of the information contained therein. Cal. Civ. Code §§ 56.101(a) & 56.36(b).

96.    Cerebral is required to create, maintain, preserve, store, abandon, or dispose of Private Information in a non-negligent manner. Cal. Civ. Code § 56.101(a).

97.    Cerebral's electronic health record systems or electronic medical record systems are required to protect and preserve the integrity of electronic Private Information. Cal. Civ. Code § 56.101(b)(1)(A). The term "electronic health record" or "electronic medical record" means an electronic record of health-related information on an individual that is created, gathered, managed, and consulted by

authorized health care clinicians and staff. Cal. Civ. Code § 56.101(c) as defined by 42 U.S.C. § 17921(5).

98.    Plaintiff and members of the Class are "Patients" as defined by Cal. Civ. Code section 56.05(j).

99.    A significant portion of the information at issue in this action is "Medical Information" as that term is defined by § 56.05(i) of the CMIA.

100.    As described above, the actions or inactions of Cerebral failed to preserve the confidentiality of Private Information, including but not limited to Plaintiff's and Class Members' full names, dates of birth, addresses, Social Security numbers, as well as likely insurance provider information, and participant information that, either alone or in combination with other publicly available information, reveals their identities.

101.    The Tracking Technologies used by other third parties made possible the linking of a Cerebral website user and his identity. The information exchanged, including the contents of searches and the act and substance of ordering medications, treatments, dates of treatment and other services provided on the Cerebral website, and even the mere use of that website in light of the services offered, reveals information about patients' "physical condition or history."

102.    As a result of placing Tracking Technologies on its website, Cerebral has released, disclosed, and/or negligently allowed third parties that are known to

it, including Meta and other unauthorized third parties, to access and view Plaintiff's and Class Members' medical information without first obtaining their written authorization as required by the provisions of Civil Code § 56, et seq.

103.   As a further result of Cerebral's actions, the confidential nature of the Plaintiff's and Class Members' medical information was breached due to Defendant's negligence or affirmative decisions.

104.   The Private Information was accessed, removed, and viewed by unauthorized third parties including Meta and other unauthorized parties by virtue of the Tracking Technologies embedded in Cerebral's website and application.

105.   In violation of the CMIA, Cerebral disclosed or permitted the disclosure of Private Information regarding Plaintiff and Class Members without authorization to a third party. This disclosure did not qualify for any of the exemptions set forth in Cal. Civ. Code §§ 56.10(b) or (c), which provide limited bases for allowing unauthorized disclosures. This disclosure of Private Information to unauthorized individuals resulted from the affirmative actions and inactions of Cerebral.

106.   In violation of the CMIA, Cerebral created, maintained, preserved, stored, abandoned, or disposed of Private Information of Plaintiff and Class Members in a manner that did not preserve the confidentiality of the information contained therein.

107.   In violation of the CMIA, Cerebral negligently created, maintained, preserved, stored, abandoned, or disposed of Private Information of Plaintiff and Class Members.

108.   In violation of the CMIA, Cerebral's electronic health record systems or electronic medical record systems did not protect and preserve the integrity of Plaintiff's and Class Members' Private Information.

109.   In violation of the CMIA, Cerebral negligently released confidential or medical information or records concerning Plaintiff and Class Members. Cerebral also violated § 56.101(a) of the CMIA.

110.   In violation of the CMIA, as a recipient of medical information pursuant to an authorization, it disclosed and/or permitted the disclosure of that medical information without obtaining a new authorization that meets the requirements of Section 56.11, or as specifically required or permitted by law.

111.   As a direct and proximate result of Cerebral's wrongful actions, inactions, omissions, and want of ordinary care that directly and proximately caused the release of Private Information of millions of individuals, such Private Information was viewed by, released to, and disclosed to third parties without appropriate written authorization.

112.   Plaintiff and Class Members are therefore entitled to injunctive relief and reasonable attorneys' fees and costs.

113.   Plaintiff seeks actual damages for Class members, statutory damages of $1,000 per Class member and punitive damages of $3,000 per Class member. In order to recover under the CMIA, Civil Code Section 56.36 expressly states that it is not necessary that the Plaintiff suffered or was threatened with actual damages.

## COUNT II
## VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT
## (CAL. PENAL CODE §§ 630, 631, *et seq*. ("CIPA"))

114.   Plaintiff incorporates the foregoing allegations as if fully set forth herein to the extent relevant to this Cause of Action and the relief available thereunder.

115.   California's Invasion of Privacy Act, California Penal Code 631(a) provides a remedy against, *inter alia*: "Any person who … intentionally taps, or makes any unauthorized connection, whether physically, electrically, …, or otherwise, with any telegraph or telephone wire, line, cable, or instrument … or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with,

employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."

116.  Cerebral is a person for the purposes of this law.

117.  Cerebral "intentionally tap[ped] ... or ma[de] [an] unauthorized connection" with respect to Class Members' communications by placing third party tracking code on its website, without "the consent of all parties" including Plaintiff, and thereby violated the CIPA.

118.  Cerebral also "aid[ed], agree[d] with, employ[d], or conspire[d] with" Meta and other third parties providing marketing services by placing their third-party tracking code on its website, and allowing such entities; to "tap" communications on its website without "the consent of all parties" including Plaintiff, and thereby violated CIPA.

119.  Cerebral facilitated the interception and simultaneous transmission to unauthorized parties, Plaintiff's and other Class Members' PII and PHI while the information was "in transit." As Plaintiff and Class Members typed communications into Cerebral's website, as a result of the Tracking Technologies that Cerebral placed there, their requests were simultaneously redirected to unauthorized third parties while in transit to Cerebral.

120.  The information communicated between patients and Cerebral was transmitted to and/or from the State of California. The information was wiretapped

"while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state."

121.    Redirection of data as a result of tracker coding before that data reaches its originally intended recipient (here, Cerebral) does not constitute a separate communication for the purposes of exclusion from CIPA coverage.

122.    Cerebral enabled non-parties to the communications to "read" the communications for the purposes of the statute. For example, unauthorized third parties could see which individuals searched for specific issues, what conditions they researched, and when and where they made appointments.

123.    Cerebral facilitated this communication "without authorization" of Plaintiff and Class Members because they did not know that the transmission was happening.

124.    Plaintiff and Class Members did not request that Cerebral and third parties target them with advertising that might be related to their health conditions.

125.    Cal. Penal Code § 637.2(a) provides that any person who has been injured by a violation of this chapter [including Penal Code §§ 630 and 631] may bring an action against the person who committed the violation for the greater of the following amounts:

a.   Five thousand dollars ($5,000) per violation.

b.  Three times the amount of actual damages, if any, sustained by the Plaintiff.

126.  Section 637.2(b) provides that "[a]ny person may . . . bring an action to enjoin and restrain any violation of this chapter and may in the same action seek damages as provided by subdivision (a)." Cal. Penal Code § 637.2(b).

127.  Section 637.2(c) provides, "It is not a necessary prerequisite to an action pursuant to this section that the Plaintiff has suffered, or be threatened with, actual damages." Cal. Penal Code § 637.2(c).

128.  Cerebral is therefore liable to Plaintiff and the Class for, at a minimum, statutory damages of $5,000 per violation as well as actual damages, and Plaintiff and Class Members are also entitled to injunctive relief.

## COUNT III
## VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT
### (CAL. PENAL CODE § 632, *et seq.*)

129.  Plaintiff incorporates the foregoing allegations as if fully set forth herein to the extent relevant to this Cause of Action and the relief available thereunder. Cal. Penal Code § 632 provides, in relevant part, that it is unlawful to "intentionally and without the consent of all parties to a confidential communication," "use[] [a] recording device to … record the confidential communication." As used in the statute "'confidential communication' means any

communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto."

130.   The written transmission of information about Plaintiff's and Class Members' searches and clicks on Cerebral's website as described above is a recording of those communications.

131.   The Tracking Technologies of other third-party tracking services included by Cerebral on its website is a "recording device."

132.   Cerebral did not have Plaintiff's or other Class Members' express authorization or consent to record their communications. Cal. Penal Code § 637.2(a) provides that any person who has been injured by a violation of this chapter [including Penal Code § 632] may bring an action against the person who committed the violation for the greater of the following amounts:

      a.  Five thousand dollars ($5,000) per violation.

      b.  Three times the amount of actual damages, if any, sustained by the Plaintiff.

133.   Section 637.2(b) provides that "[a]ny person may . . . bring an action to enjoin and restrain any violation of this chapter and may in the same action seek damages as provided by subdivision (a)." Cal. Penal Code § 637.2(b).

///

///

134.    Section 637.2(c) provides, "It is not a necessary prerequisite to an action pursuant to this section that the Plaintiff has suffered, or be threatened with, actual damages." Cal. Penal Code § 637.2(c).

135.    Cerebral is therefore liable to Plaintiff and the Class for, at a minimum, statutory damages of $5,000 per violation, and actual damages. Plaintiff and Class Members are also entitled to injunctive relief.

## COUNT IV
### INVASION OF PRIVACY (CALIFORNIA CONSTITUTION, ARTICLE I, SECTION 1)

136.    Plaintiff incorporates the foregoing allegations by reference as if fully set forth herein to the extent relevant to this Cause of Action and the relief available thereunder.

137.    The California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possession, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const., Art. I., § 1.

138.    Plaintiff and Class Members had a legitimate expectation of privacy in their Private Information and were entitled to the protection of this information against disclosure to unauthorized third parties.

139.    Cerebral owed a duty to Plaintiff and Class Members to keep their Private Information confidential.

140.    Cerebral failed to protect and released to unauthorized third parties the Private Information of Plaintiff and Class Members.

141.    Cerebral allowed unauthorized third parties to examine the Private Information of Plaintiff and Class Members by way of its affirmative actions and negligent failures to protect this information.

142.    The unauthorized release to, custody of, and examination by unauthorized third parties of the Private Information of Plaintiff and Class Members is highly offensive to a reasonable person.

143.    The intrusion at issue was into a place or thing, which was private and is entitled to be private.

144.    Plaintiff and Class Members disclosed their Private Information to Cerebral as part of Plaintiff's and Class Members' relationships with Cerebral, but privately and with the intention that the Private Information would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization or affirmative consent.

145.    The sharing of data that resulted from the actions and inactions of Cerebral constitutes an intentional interference with Plaintiff's and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs

or concerns and those of their families, of a kind that would be highly offensive to a reasonable person.

146.   Cerebral either knew or reasonably should have known that its use of Tracking Technology providing Private Information to unauthorized third parties would cause injury and harm to Plaintiff and Class Members.

147.   As a proximate result of the above acts and omissions of Cerebral, the Private Information of Plaintiff and Class Members was disclosed to third parties without authorization, causing Plaintiff and Class Members to suffer injuries and damages.

148.   Unless and until enjoined and restrained by order of this Court, Cerebral's wrongful conduct will continue to cause irreparable injury to Plaintiff and the Class, entitling them to seek injunctive relief. Plaintiff also seeks damages to the fullest extent permitted by law. This action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or nonpecuniary, for a large class of persons and the general public. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff in relation to Plaintiff's stake in the matter. Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff also seeks the recovery of attorneys' fees and costs in prosecuting this

action against Defendant under Cal. Code Civ. Proc. § 1021.5 and other applicable law.

## COUNT V
## NEGLIGENCE AND NEGLIGENCE *PER SE*

149.   Plaintiff incorporates the foregoing allegations by reference as if fully set forth herein to the extent relevant to this Cause of Action and the relief available thereunder.

150.   Cerebral knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, misused, and disclosed to unauthorized parties.

151.   As a provider of health care under the law, Cerebral had a special relationship with Plaintiff and Class Members who entrusted Cerebral with adequately protecting their Private Information.

152.   Cerebral knew that the Private Information at issue was private and confidential and should be protected as private and confidential, and thus, Cerebral owed a duty of care not to subject Plaintiff and Class Members to an unreasonable risk of unauthorized disclosure.

153.   Cerebral knew, or should have known, of the risks inherent in collecting and storing Private Information and allowing it to be accessed by unauthorized third parties.

154.   Cerebral's failure to take proper security measures to protect Plaintiff's and Class Member's Private Information and its allowing Tracking Technologies on its website and mobile app, created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access to Private Information by unauthorized third parties. As described above, Plaintiff and Class Members are part of a foreseeable, discernable group that was at high risk of having their Private Information used and misused for financial purposes by unauthorized third parties.

155.   Cerebral had a duty under common law to have procedures in place to detect and prevent the transmission or unauthorized dissemination of Plaintiff's and Class Members' Private Information.

156.   Cerebral had a duty not to employ Tracking Technologies or other technology that would transmit Plaintiff's and the Class' Private Information to unauthorized third parties and to and otherwise protect the Private Information of Plaintiff and Class Members pursuant to the state and federal laws set forth above, resulting in Cerebral's liability under principles of negligence and negligence per se.

157.   Cerebral owed a duty to timely and adequately inform Plaintiff and Class Members, in the event of their Private Information being improperly disclosed to unauthorized third parties.

///

158.   Cerebral systematically failed to provide to protect from transmission to unauthorized third parties the Private Information in its  possession or over which it had supervision and control.

159.   Cerebral, through its actions and omissions, unlawfully breached duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Cerebral's possession, supervision, and control.

160.   Cerebral, through its actions and omissions, unlawfully breached duties owed to Plaintiff and Class Members by failing to have appropriate procedures in place to prevent dissemination of Plaintiff's and Class Members' Private Information, and in fact, had procedures in place that exposed Plaintiff's and Class Members' Private Information to unauthorized third parties.

161.   Cerebral, through its actions and omissions, unlawfully breached duties to timely and fully disclose to Plaintiff and Class Members that the Private Information within Cerebral's possession, supervision, and control was improperly accessed by unauthorized third parties, the nature of this access, and precisely the type of information improperly accessed.

162.   Cerebral's breach of duties owed to Plaintiff and Class Members proximately caused Plaintiff's and Class Members' Private Information to be compromised by being accessed by unauthorized third parties.

163.    As a result of Cerebral's ongoing failure to adequately notify Plaintiff and Class Members regarding what type of Private Information has been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages.

164.    Cerebral's conduct violated the laws set forth herein, including Cal. Civ. Code §§ 56.10(a), 56.101, 1798.21, 1798.29 and Article I, § 1 of the California Constitution. Cerebral also violated federal statutes and regulations, including the FTC Act, HIPAA, the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C and the other sections identified above, which required that Cerebral maintain   the   privacy of Plaintiff's and Class Members' Private Information, among other things.

165.    Plaintiff and Class Members are within the class of persons that these statutes and rules were designed to protect.

166.    It was not only reasonably foreseeable, but it was intended, that the failure to reasonably protect and secure Plaintiff's and Class Members' Private Information in compliance with applicable laws would result in an unauthorized

third party such as Meta gaining access to Plaintiff's and Class Members' Private Information, resulting in Cerebral's liability under principles of negligence per se.

167.    Plaintiff's and Class Members' Private Information constitutes personal property that was taken and misused as a proximate result of Cerebral's negligence, resulting in harm, injury and damages to Plaintiff and Class Members.

168.    As a proximate result of Cerebral's negligence and breach of duties as set forth above, Cerebral's breaches of duty caused Plaintiff and Class Members to, inter alia, have their private and protected data shared with unauthorized third parties without their authorization or consent, receive unwanted advertisements that reveal seeking treatment for specific medical conditions, fear, anxiety and worry about the status of their Private Information, diminution in the value of their personal data for which there is a tangible value, and/or a loss of control over their Private Information, all of which can constitute actionable actual damages.

169.    In failing to secure Plaintiff's and Class Members' Private Information, Cerebral is guilty of oppression, fraud, or malice. Cerebral acted or failed to act with a reckless, willful, or conscious disregard of Plaintiff's and Class Members' rights. Plaintiff, in addition to seeking actual damages, also seeks punitive damages on behalf of herself and the Class.

170.    Cerebral's conduct in violation of applicable laws directly and proximately caused the unauthorized access and disclosure of Plaintiff's and Class

Members' Private Information, and as a result, Plaintiff and Class Members have suffered and will continue to suffer damages as a result of Cerebral's conduct. Plaintiff and Class Members seek actual, compensatory, and punitive damages, and all other relief they may be entitled to as a proximate result of Cerebral's negligence and negligence *per se*.

## COUNT VI
## BREACH OF FIDUCIARY DUTY

171.   Plaintiff incorporates the foregoing allegations by reference as if fully set forth herein to the extent relevant to this Cause of Action and the relief available thereunder.

172.   Plaintiff and Class Members gave Cerebral their Private Information in confidence, believing that Cerebral would protect that information and keep it private. Plaintiff and Class Members would not have provided Cerebral with this information had they known it would not be adequately protected and would be misused and transmitted by Cerebral.

173.   Cerebral's acceptance and storage of Plaintiff's and Class Members' Private Information created a fiduciary relationship between Cerebral and Plaintiff and Class Members. In light of this relationship, Cerebral must act primarily for the benefit of its members, which includes safeguarding and protecting Plaintiff's and Class Members' Private Information.

174.    Cerebral has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship. It breached that duty by failing to properly safeguard Plaintiff's and Class Members' Private Information that it collected and by transmitting such information to unauthorized third parties.

175.    As a direct and proximate result of Cerebral's breaches of their fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (i) actual identity compromise to unauthorized third parties; (ii) the loss of the opportunity to determine when and how their Private Information is used; (iii) the compromise and publication of their Private Information to unauthorized third parties; and (iv) the continued risk to their Private Information, which remain in Cerebral's possession, custody or control and is subject to further unauthorized disclosures so long as Cerebral fails to undertake appropriate and adequate measures to protect the Private Information of current and former patients and their beneficiaries and dependents.

## COUNT VII
## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (CAL. BUS/ & PROF. CODE §§17200 *et seq.*)

176.    Plaintiff incorporates the foregoing allegations by reference as if fully set forth herein to the extent relevant to this Cause of Action and the relief available thereunder, except as to entitlement to and claims for damages, which are not sought in this Cause of Action.

177.    The acts, misrepresentations, omissions, practices, and non-disclosures of Cerebral alleged herein constituted unlawful and unfair business acts and practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

178.    Cerebral engaged in "unlawful" business acts and practices in violation of the California statutes set forth above, including Cal. Civ. Code §§ 56.10(a), 56.101, 1798.21, 1798.29 and Article I, § 1 of the California Constitution, the California Invasion of Privacy Act, and Cal. Penal Code § 630-632 et seq. ("CIPA"). Cerebral's acts and practices detailed above also violated federal statutes and regulations, including the FTC Act, HIPAA, the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C and the other sections identified above. Plaintiff reserves the right to allege other violations of law committed by Cerebral that constitute unlawful business acts or practices within the meaning of Cal. Bus. & Prof. Code §§ 17200, *et seq*. The allegations of facts set forth in detail above specifically describe and demonstrate how Defendant's actions and inactions violated these laws.

179.    Cerebral has also engaged in "unfair" business acts or practices. There are several tests that determine whether a practice that impacts consumers as

compared to competitors is "unfair," examining the practice's impact on the public balanced against the reasons, justifications and motives of Cerebral. Cerebral's conduct would qualify as "unfair" under any of these standards:

    a. whether the practice offends an established public policy, which here is whether the practices at issue offend the policies of protecting consumers' Private Information by engaging in illegal practices, as reflected in California law and policy set forth above;

    b. balancing the utility of Cerebral's conduct against the gravity of the harm created by that conduct, including whether Cerebral's practices caused substantial injury to consumers with little to no countervailing legitimate benefit that could not reasonably have been avoided by the consumers themselves, and causes substantial injury to them; or

    c. whether the practice is immoral, unethical, oppressive, unscrupulous, unconscionable or substantially injurious to consumers.

180.   The unfair business practice and harm caused by Cerebral's failure to take adequate and reasonable measures to ensure its data systems were protected against unauthorized disclosures and in fact allowing Tracking Technologies to transmit Plaintiff's and the Class Member'sPrivate Information, improperly installing code that would permit access to unauthorized persons and thus failing to have adequate privacy policies and procedures in place that did not preserve the

confidentiality of the Private Information of Plaintiff and the Class Members in their possession, and failing to protect and preserve confidentiality of Private Information of Plaintiff and Class Members against disclosure and release, outweighs the utility of such conduct and such conduct offends public policy, is immoral, unscrupulous, unethical, and offensive, and causes substantial injury to Plaintiff and Class Members. The allegations of facts set forth in detail above specifically describe and demonstrate how Cerebral's actions and inactions constitute unfair business practices.

181. Cerebral either knew or should have known that Tracking Technologies would enable the transmission of the Private Information of Plaintiff and Class Members. The business acts and practices by Cerebral for failure to keep confidential medical, or personal data protected did not meet all applicable standards of care and vigilance.

182. These unlawful and unfair business acts or practices conducted by Cerebral have been committed in the past and continue. While Cerebral has acknowledged some of the wrongful nature of its actions, Cerebral has not fully corrected or publicly issued comprehensive corrective notices to Plaintiff and the Class Members and may not have fully corrected or enacted adequate policies and procedures to protect and preserve the confidentiality of medical and personal

identifying information of Plaintiff and the Class Members in its possession and in the possession of unauthorized third parties.

183.    As set forth above, Plaintiff and Class Members have been injured in fact and lost money or property as a result of Cerebral's unlawful and unfair business practices, having provided to third parties information about them that has a specific inherent monetary value that can be sold, bartered, or exchanged and used for commercial purposes. In addition, Plaintiff and Class Members have suffered injury in fact by at least the following: (i) the loss of the opportunity as to how their Private Information is used; (ii) the compromise and publication of their Private Information to unauthorized third parties; (iii) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of Cerebral's conduct and the continued risk to their Private Information, which remain in Cerebral's possession, custody or control and is subject to further unauthorized disclosures so long as  Cerebral fails to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and Class Members and ceases the use of Tracking Technologies; and (iv) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised by Cerebral's conduct.

///

184.    Plaintiff and Class Members have no other adequate remedy at law in that, absent injunctive relief from the Court, Cerebral is likely to not fully redress the issues raised by its illegal and unfair business practices. Cerebral has announced only partial changes to its use of Tracking Technologies.

185.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order of this Court for herself, Class Members, and for the benefit of the public granting injunctive relief in the form of requiring Cerebral to correct its illegal conduct, to prevent Cerebral from repeating the illegal and wrongful practices as alleged above and protect and preserve confidentiality of Private Information in Cerebral's possession and in possession of third parties that has been accessed, downloaded, exfiltrated, and viewed by unauthorized third parties. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff also seeks an order of this Court for equitable and injunctive relief in the form of prohibiting Cerebral from continuing to refuse publicly issuing comprehensive direct and corrective notices as well as restitution and restitutionary disgorgement of the monies Cerebral saved and made from third party platforms and advertisers, in which Plaintiff has a vested interest.

186.    This action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or nonpecuniary, for a large class of persons and the general public. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff

in relation to Plaintiff's stake in the matter. Because this case is brought for the purposes of enforcing important rights affecting the public interest, Plaintiff also seeks the recovery of attorneys' fees and costs in prosecuting this action against Defendant under Cal. Code Civ. Proc. § 1021.5 and other applicable law.

## PRAYER FOR RELIEF

Plaintiff, both individually and on behalf of the Class and for the benefit of the public, prays for orders and judgment in favor of Plaintiff and against Cerebral as follows, as may be applicable to the Causes of Action set forth above:

A. Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class defined herein;

B. Designating Plaintiff as a representative of the Class and listed counsel as Class counsel;

C. Declaring Cerebral's conduct in violation of the laws set forth above, including Cal. Civ. Code §§ 56.10(a), 56.101, 1798.21, 1798.29, Cal. Bus. and Prof. Code §§ 17200 et seq., Cal. Bus. and Prof. Code §§ 225752257, Cal. Penal Code § 630-632 et seq., and Article I, § 1 of the California Constitution.

An order:

D. prohibiting Cerebral from engaging in the wrongful and unlawful acts described herein, including removing all Tracking Technologies from its

websites and mobile applications, and instituting policies in which it agrees that it will not share, disseminate, or transmit Private Information of Plaintiff and Class Members to any unauthorized third party;

E.  All other appropriate actual, compensatory, statutory, punitive, and other forms of damages as appropriate and permitted under the causes of action set forth above;

F.  All appropriate equitable monetary relief;

G.  Awarding Plaintiff's counsel reasonable attorneys' fees and non-taxable expenses;

H.  Awarding Plaintiff costs;

I.  Awarding pre-and post-judgment interest at the maximum rate permitted by applicable law; and,

J.  Granting such further relief as the Court deems just.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 31, 2023          By:  _s/ M. Anderson Berry_____

M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**ARNOLD LAW FIRM**
6200 Canoga Avenue, Suite 375
Woodland Hills, CA 91367
Tel.: (747) 777-7748
aberry@justice4you.com
gharoutunian@justice4you.com

Melissa R. Emert (*pro hac vice forthcoming*)
Gary S. Graifman (*pro hac vice forthcoming*)
**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Tel: (201) 391-7000
memert@kgglaw.com
ggraifman@kgglaw.com

Lynda Grant (*pro hac vice forthcoming*)
**THEGRANTLAWFIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (212) 292-4441
lgrant@grantfirm.com

*Attorneys for Plaintiff and the Class*